# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

| | |
|---|---|
| MICHAEL T. TOOLE, | CASE NO.: 12-CV-02445 (PJS/TNL) |
| PETITIONER, | |
| V. | **REPORT AND RECOMMENDATION** |
| J.E. KRUEGER, WARDEN, | |
| RESPONDENT. | |

Michael T. Toole, Federal Prison Camp-Duluth, P.O. Box 1400, Duluth, MN 55814, *pro se* Petitioner; and

D. Gerald Wilhelm, Erika R. Mozangue, and Gregory G. Brooker, Assistant U.S. Attorneys, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, for Respondent.

## I. INTRODUCTION

This matter is before the Court, United States Magistrate Judge Tony N. Leung, on a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 by a person in Federal Custody. (Pet. for Writ of Habeas Corpus, Docket No. 1.) Petitioner Michael T. Toole ("Petitioner") is an inmate confined at Federal Prison Camp – Duluth ("FPC-Duluth"), in Duluth, Minnesota. (Groteboer Aff., ¶ 3, Docket No. 9.) Petitioner, a former Pennsylvania state judge, is serving a 30-month sentence imposed by the United States District Court for the Middle District of Pennsylvania, following his conviction of one count of Honest Services Wire Fraud, in violation of 18 U.S.C. §§ 1343, 1346, and one

count of Subscribing and Filing a Materially False Tax Return, in violation of 18 U.S.C. § 7206(1). *See United States v. Toole*, No. 3:09-CR-385, 2009 WL 4623710 (M.D. Pa. Dec. 4, 2009).

Petitioner brings the present petition claiming that his continued detention at FPC-Duluth violates his rights under federal law and the Constitution because the Bureau of Prisons ("BOP") is authorized to place him on home detention on or after September 27, 2012. (Pet'r's Mem. in Supp. of Pet., Ex. H, Docket No. 1.) Respondent opposes the Petition, arguing that the only authorization that permits the BOP to place Petitioner on home confinement is 18 U.S.C. § 3624(c)(2), which states that no more than 10 percent of Petitioner's 30-month term can be served in home detention. (Resp't's Mem. in Resp. to Pet. for Habeas Corpus at 1, 10, 16, Docket No. 8.) Respondent argues that because Petitioner is serving a 30-month sentence, no more than three months of his sentence can be served in home detention. (Resp't's Mem. at 17.)

The matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and District of Minnesota Local Rule 71.1. Petitioner and Respondent provided submissions to the Court, the last of which was filed November 9, 2012 (Pet'r's Aff., Docket No. 14).

For the reasons set forth below**, IT IS HEREBY RECOMMENDED** that the Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Docket No. 1) be **DENIED.**

## II. PETITIONER'S CLAIMS

According to Petitioner,

> On December 26, 2011, Toole began participating in the Residential Drug Abuse Program (RDAP). Presently, he is scheduled to complete the initial 9-month unit-based component of RDAP on September 27, 2012. In anticipation and contemplation of Toole's successful completion of this part of the program, his Unit Team recommended a "180-day Residential Reentry Center program which is required for transitional services for the drug program and 3621E early release eligibility," and requested a "halfway house placement date of October 10, 2012."

(Pet'r's Mem., Ex. H at 31.)

At the end of May 2012, Petitioner's case manager informed him that it was extremely unlikely that Petitioner would be approved for placement in a residential reentry center (RRC) in Scranton, Pennsylvania, due to possible safety concerns. (Wild-Olson Aff., ¶ 7, Docket No. 10.) Petitioner has consistently been told by his case manager and unit manager that the law does not permit him to be placed on home detention before his "home detention eligibility date" or "ten-percent date," which is December 27, 2012.[1] (Wild-Olson Aff., ¶ 8.) On August 29, 2012, Petitioner's case manager confirmed that Petitioner would not be receiving any halfway house placement and he will be eligible for home-detention on December 27. (Wild-Olson Aff., ¶ 8.)

On September 7, 2012, Petitioner filed a Request for Administrative Remedy with the Warden or Regional Director. (Pet'r's Mem., Ex. K at 51-52.) In his request,

---

[1] There is some discrepancy in the record whether this date should be December 27 or 28. (*See* Wild-Olson Aff., ¶ 7, n.2; Groteboer Aff. Ex. A. at 2.) The Court has chosen to use December 27, the date listed in the inmate data printouts regarding Petitioner kept by FPC-Duluth. (Groteboer Aff. Ex. A. at 2.) This discrepancy does not affect the Court's recommendation. The Court takes no position on whether December 27 or 28 is the "proper" home detention eligibility date for Petitioner.

Petitioner states that he is being denied appropriate consideration for home detention upon completion of the unit-based component of the Residential Drug Abuse Program ("RDAP") based on the BOP's misinterpretation of federal law. (Pet'r's Mem., Ex. H at 45.) Petitioner claims that the BOP is authorized, though not obligated, to place him on home detention prior to December 27. (Pet'r's Mem., Ex. H at 45.) Specifically, Petitioner argues:

> (1) 18 U.S.C. § 3621(e)(2)(A) authorizes the Bureau to alter or change the custodial conditions of an inmate who has successfully completed the unit-based component of [RDAP].
>
> (2) This statutory authority permits the Bureau to place an inmate on home detention for a period of time in excess of the time frames set forth in 18 U.S.C. § 3624(c)(2).

(Pet'r's Mem. at 2-3, Docket No. 6.)

On September 19, 2012, J.E. Kruger, the Warden at FPC-Duluth, responded to and denied Petitioner's request for administrative remedy. (Pet'r's Aff., Ex. L at 4, Docket No. 4.) Petitioner appealed this decision on October 1, 2012. (Pet'r's Aff., Ex. N at 8.) On October 15, 2012, Petitioner received a response denying his Regional Administrative Remedy Appeal. (Pet'r's Aff., Ex. P at 3.) On November 6, 2012, Petitioner prepared and mailed a Central Office Administrative Remedy Appeal to the Office of General Counsel to appeal the denial of his Regional Administrative Remedy Appeal. (Pet'r's Aff., Ex. Q at 5.)

## III. ANALYSIS

When an inmate challenges the fact or duration of his confinement, a writ of habeas corpus is the appropriate remedy. *Preiser v. Rodriquez*, 411 U.S. 475, 490 (1973). Petitioner seeks review under the BOP statute regarding early release, which relates to the fact or duration of his confinement. Therefore, the proper jurisdictional basis to pursue Petitioner's habeas petition is 28 U.S.C. § 2241.

Warden Krueger is the proper respondent in this matter pursuant to 28 U.S.C. §§ 2242, 2243. *See Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) ("[T]he default rule is that the proper respondent is the warden of the facility where the prisoner is being held . . . .").

### A. Exhaustion of Administrative Remedies.

Federal prisoners generally must exhaust all available administrative remedies before seeking habeas corpus relief under 28 U.S.C. § 2241. *United States v. Tindall*, 455 F.3d 885, 888 (8th Cir. 2006); *United States v. Chappel*, 208 F.3d 1069, 1069 (8th Cir. 2000). The BOP provides an administrative remedy procedure for federal inmates seeking formal review of grievances relating to their confinement. *See* 28 C.F.R. §§ 542.10-.18. Under the BOP's Administrative Remedy Program, the inmate must first present his concern informally to an appropriate staff member, who must attempt to resolve the concern. 28 C.F.R. § 542.13. If the inmate is unsuccessful, the inmate may file a formal Administrative Remedy Request, usually with the Warden of the facility where he is incarcerated. 28 C.F.R. § 542.14. If the inmate is not satisfied with the Warden's response, he may appeal the response to the Regional Director within 20 days

of the date that the Warden signed the response. 28 C.F.R. § 542.15. If the prisoner is dissatisfied with the response from the Regional Director, he may file an appeal with the Central Office. 28 C.F.R. § 542.15. A prisoner is considered to have exhausted his administrative remedies when he receives a response from the Central Office, unless the Central Office fails to respond within the allotted time. 28 C.F.R. §§ 542.15, .18.

Exhaustion of administrative remedies protects the authority of administrative agencies by limiting interference in agency affairs. *See Mason v. Ciccone*, 531 F.2d 867, 869 (8th Cir. 1976). But, the exhaustion requirement for habeas petitions under § 2241 is judicially created. *Lueth v. Beach*, 498 F.2d 795, 797 n.3 (8th Cir. 2007). Habeas petitioners can thus be excused from the exhaustion requirement if proceeding through the administrative remedy process would undoubtedly be an exercise in futility that could serve no useful purpose. *Elwood v. Jeter*, 386 F.3d 842, 844 n.1 (8th Cir. 2004).

In this case, it would be futile for Petitioner to exhaust his administrative remedies. The Government agrees and concedes this fact. Petitioner has completed the first and second steps of the BOP's administrative remedy procedure by presenting his concern informally and by filing a formal request for relief. (Pet'r's Aff., Ex. P at 3, Docket No. 14.) After being denied his requested relief by the Regional Director, Petitioner filed an appeal with the Central Office on November 6, 2012. (Pet'r's Aff., Ex. Q at 5.) Petitioner is currently waiting for a response from the Central Office. Because he may not be able to exhaust his administrative remedies and receive the relief he seeks before his December 27 home detention eligibility date, exhaustion is futile. Therefore, this Court recommends that the exhaustion requirement be waived.

### B. Prerelease Custody and Residential Drug Abuse Program

Petitioner's situation has resulted from the convergence of two events: his completion of the unit-based component of the RDAP and eligibility for a prerelease custody determination. While much of Petitioner's petition refers to his participation in the RDAP, Petitioner's request for relief under 28 U.S.C. § 2241 is more properly understood as a challenge to Respondent's prerelease custody determination.

#### 1. Prerelease Custody

The BOP is charged with "designat[ing] the place of [a] prisoner's imprisonment." 18 U.S.C. § 3621(b); *see also Miller v. Whitehead*, 527 F.3d 752, 754 (8th Cir. 2008); *accord Fults v. Sanders*, 442 F.3d 1088, 1091 (8th Cir. 2006) ("There is no question that § 3621(b) provides the BOP with broad discretion to choose the location of an inmate's imprisonment."). This authority, as described in 18 U.S.C. § 3624(c), includes making arrangements for adjustment and reintegration of a prisoner into the community as his term of imprisonment draws to a close. *See* 18 U.S.C. § 3624(c)(1); *Miller*, 527 F.3d at 754. To this end, the BOP is required,

> to the extent practicable, [to] ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community.

18 U.S.C. § 3624(c)(1).

### a. Prerelease Custody Determination

In determining the nature of a prisoner's prerelease custody and programming, the BOP uses the same factors applicable to the determination of the prisoner's imprisonment:

> (1) the resources of the facility contemplated;
> (2) the nature and circumstances of the offense;
> (3) the history and characteristics of the prisoner;
> (4) any statement by the court that imposed the sentence--
>     (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
>     (B) recommending a type of penal or correctional facility as appropriate; and
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

*Id.* §§ 3621(b), 3624(c)(6); *see* 28 C.F.R. § 570.22; *see also Walker v. Fisher*, No. 12-cv-940 (RHK/JSM), 2012 WL 2721580, at *9 (D. Minn. June 14, 2012), *adopting report and recommendation*, 2012 WL 2720666 (D. Minn. July 9, 2012); *O'Hara v. Rios*, No. 08-cv-5160 (JRT/JJK), 2009 WL 3164724, at *2 (D. Minn. Sept. 28, 2009). Prerelease custody determinations are made on an individual basis and are required to take into account the amount of time needed "to provide the greatest likelihood of successful reintegration in to the community." 18 U.S.C. § 3624(c)(6)(B), (C); *see also* 28 C.F.R. § 570.22.

### b. Types of Prerelease Custody

Prerelease custody may take many forms including community and home confinement. *See* 18 U.S.C § 3624(c). Community confinement is often referred to as a RRC or community corrections center ("CCC"). *See Garza v. Davis*, 596 F.3d 1198,

1201 n.3 (10th Cir. 2010) ("RRCs and CCCs are two words used to describe the same animal-'residence in a community treatment center, halfway house, restitution center, mental health facility, alcohol or drug rehabilitation center, or other community correctional facility (including residential re-entry centers); and participation in gainful employment, employment search efforts, community service, vocational training, treatment, educational programs, or similar facility-approved programs during non-residential hours.'" (quoting 28 C.F.R. § 570.20(a))). Conversely, home confinement "restricts the defendant to his place of residence continuously, except for authorized absences, enforced by appropriate means of surveillance by the probation office or other monitoring authority." 28 C.F.R. § 570.20(b).

As stated above, prerelease custody and programming generally takes place during the final months of an inmate's term of imprisonment and is "not to exceed 12 months." 18 U.S.C. §3624(c)(1); *see also* 28 C.F.R. § 570.21(a); *Walker*, 2012 WL 2721580, at *9 ("Section 3264(c) merely provides that pre-release placement into a RRC cannot exceed 12 months."); *O'Hara*, 2009 WL 3167425, at *5 ("The plain meaning of [section 3264(c)(1)] is that the period of confinement in a community correctional facility must not exceed 12 months, not that it must be 12 months."). The use/availability of home confinement during this time is further restricted by statute. *See* O'Hara, 2009 WL 3167425, at *5. Section 3624 limits the BOP's authorization for placing an inmate on home confinement *in connection with prerelease custody* to "the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." 18 U.S.C. § 3624(c)(2); *see also* 28 C.F.R. § 570.21(b).

With respect to making determinations concerning prerelease custody and programming, § 3624 expressly provides that "[n]othing in this subsection shall be construed to limit or restrict the authority of the [BOP] under [18 U.S.C. §] 3621." 18 U.S.C. § 3624(c)(4). Additionally, 28 C.F.R. § 570.21(c) states that the established "time-frames may be exceeded w*hen separate statutory authority allows greater periods of community confinement* as a condition of pre-release custody." (Emphasis added.)

### 2. BOP's Residential Drug Abuse Program

#### a. RDAP Generally

Pursuant to 18 U.S.C. § 3621(e)(1)(C), the BOP is required to provide the RDAP to eligible prisoners. Under this provision, the BOP "shall make available appropriate substance abuse treatment for each prisoner [the BOP] determines has a treatable condition of substance addiction or abuse." 18 U.S.C. § 3621(e)(1)(C).

Residential substance abuse treatment is defined as "a course of individual and group activities and treatment, lasting at least 6 months, in residential treatment facilities set apart from the general prison population." *Id.* § 3621(e)(5)(A). To successfully complete the RDAP, a prisoner must complete the following components:

> (1) **Unit-based component.** Inmates must complete a course of activities provided by drug abuse treatment specialists and the Drug Abuse Program Coordinator in a treatment unit set apart from the general prison population. This component must last at least six months.
>
> (2) **Follow-up services.** If time allows between completion of the unit-based component of the RDAP and transfer to a community-based program, inmates must participate in the follow-up services to the unit-based component of RDAP.

> (3) **Transitional drug abuse treatment component.** Inmates who have completed the unit-based program and (when appropriate) the follow-up treatment and are transferred to community confinement must successfully complete community-based drug abuse treatment in a community-based program to have successfully completed RDAP. The Warden, on the basis of his or her discretion, may find an inmate ineligible for participation in a community-based program.

28 C.F.R. § 550.53.

As an incentive for participation in the RDAP, the BOP is authorized to reduce a prisoner's sentence if he or she successfully completes a BOP-sponsored drug rehabilitation program. 18 U.S.C. § 3621(e)(2)(B). "The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve." *Id.*

Prisoners are not automatically entitled, however, to a reduced sentence after completing the RDAP. Instead, the BOP has broad discretion in deciding whether to reduce an inmate's sentence. *See Lopez v. Davis*, 531 U.S. 230, 241 (2001) ("When an eligible prisoner successfully completes drug treatment, the [BOP] . . . has the authority, but not the duty, . . . to reduce his term of imprisonment."); *Bellis v. Davis*, 186 F.3d 1092, 1094 (8th Cir. 1999) ("[Section 3621(e)(2)(B)] vests broad discretion in the BOP to determine which individuals among the group of statutorily eligible inmates convicted of nonviolent offenses, are appropriate candidates for early release . . . [the language of the statute] is discretionary and does not mandate that the BOP grant a sentence reduction to any particular inmate or class of inmates.").

### b. Completion of the RDAP's Unit-Based Component

Once a prisoner has completed the unit-based component, the next RDAP component is dependent upon the amount of time the prisoner has left to serve. *See* 28 C.F.R. § 550.53(a). "*If time allows* between completion of the unit-based component of the RDAP and transfer to a community-based program, inmates must participate in the follow-up services to the unit-based component of the RDAP." 28 C.F.R. § 550.53(a)(2) (emphasis added); *see also* Psychology Treatment Programs, Program Statement P5330.11 (March 16, 2009), p. 22 ("An inmate must remain in Follow-Up Treatment . . . for 12 months or until he/she is transferred to a RRC.") ("P5330.11"), *available at* http://www.bop.gov/policy/progstat/5330_011.pdf. In situations where there is no time between completion of the unit-based program and transfer to community confinement, the inmate moves directly to the third and final component of the program, which requires "successful[] complet[ion of] community-based drug abuse treatment in a community-based program." 28 C.F.R. § 550.53(a)(3). A prisoner must complete this community-based component in order to be deemed to have successfully completed the RDAP and qualify for the up-to-one-year reduction in custody. 18 U.S.C. § 3621(e)(2)(B); 28 C.F.R. § 550.56(a).

Notwithstanding the foregoing, 18 U.S.C. § 3621(e)(2)(A) also provides that "[a]ny prisoner who, in the judgment of the [BOP], has successfully completed a program of residential substance abuse treatment . . . shall remain in the custody of the Bureau under such conditions as the Bureau deems appropriate."

## C. Petitioner's Situation

Petitioner's sentence expires on October 31, 2013. (Groteboer Aff., Ex. A at 3.) Petitioner's current projected release date is March 27, 2013, based on his assumed completion of the RDAP.[2] (Groteboer Aff., Ex. A at 3.)

Petitioner completed the RDAP's unit-based component on September 27, 2012. (Wild-Olson Aff., ¶ 3.) September 2012 is within 12 months of the March 2013 projected release date. Accordingly, Petitioner is eligible to participate in prerelease custody and programming. *See* 18 U.S.C. § 3624(c)(1).

In preparation for Petitioner's prerelease, Petitioner's case manager completed the Institutional Referral for RRC Placement and Supervision Release Plan paperwork. (Wild-Olson Aff., ¶ 4, Ex. B.) As part of Petitioner's Supervision Release Plan, the case manager recommended that Petitioner be placed in a RRC for 180 days, i.e., approximately six months. (Wild-Olson Aff., Ex. B.) This six-month *prerelease plan*, which was approved, complies with the time-frames of 18 U.S.C. 3624(c)(1) and 28 C.F.R. § 570.21(a) as well as P5330.11, which states that an inmate should ordinarily receive "no less than a 120-day placement in an RRC" for the community-based component of the RDAP," p. 23. (Wild-Olson Aff., ¶ 5, Ex. C.) Indeed, Petitioner's case manager noted that Petitioner "is recommended for a 180-day [RRC] program which is required for transitional services for the drug program and 3621E early release eligibility." (Wild-Olson Aff., Ex. B.)

---

[2] Respondent uses the abbreviation "3621E COMPL" to designate this type of early release. (Resp't's Mem. at 2.)

Under the rules and regulations governing prerelease custody and programming, the BOP is authorized to place a prisoner in home confinement for a limited portion of that time: "the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." 18 U.S.C. § 3624(c)(2); *see also* 28 C.F.R. § 570.21(b). Ten percent of Petitioner's 30-month term of imprisonment is three months; three months is shorter than six months. Therefore, Petitioner is eligible for 3 months of home confinement as part of his prerelease custody and programming.

"Inmates may be designated to community confinement as a condition of pre-release custody and programming during the final months of the inmate's term of imprisonment . . . ." 28 C.F.R. § 570.21(1). As stated above, Petitioner's current projected release date is March 27, 2013. Under the prerelease plan, it was recommended that Petitioner spend 180 days in RRC. For reasons not at issue in this Petition, Petitioner was not transferred to the recommended RRC. Given that (1) prerelease custody and programming is a combination of conditions which "will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community," 18 U.S.C. § 3624(c); (2) Petitioner will not be going to RRC; and (3) the limited amount of home confinement authorized as part of prerelease custody and programming, the December 27, 2012 home-confinement eligibility date given to Petitioner reflects the maximum amount of home confinement available to Petitioner as part of his prerelease custody and programming.

There is no dispute that, since Petitioner is within 12 months of his projected release date, decisions regarding his custody are prerelease decisions governed by 18

U.S.C. § 3624(c). (*See* Resp't's Mem. at 12-15; Pet'r's Mem. at 37.) There is also no dispute that the factors of 18 U.S.C. § 3621(b) must be applied to Petitioner on an individual basis to determine his prerelease custody and programming. (*See* Pet'r's Mem. at 37; Resp't's Mem. at 12-13.) *See* 18 U.S.C. § 3624(c); 28 C.F.R. § 570.22.

Petitioner argues, however, that 18 U.S.C. § 3621(e)(2)(A) provides separate statutory authority for the BOP to place him on home confinement in excess of § 3624(c)'s limitations. The regulations governing the time-frames for community confinement and home detention as part of an inmate's prerelease custody and programming provide that "[t]hese time-frames may be exceeded when separate statutory authority allows greater periods of community confinement as a condition of pre-release custody." 28 C.F.R. § 570.21(c). Section 3621(e)(2)(A) provides that a prisoner who has completed the unit component of the RDAP "shall remain in the custody of the [BOP] under such conditions as the [BOP] deems appropriate." 18 U.S.C. § 3621(e)(2)(A). Based on (1) his completion of the unit component of the RDAP; (2) the language of § 3621(e)(2)(A); (3) the BOP's discretion for inmate placement under § 3621(c); and (4) the language in 18 U.S.C. § 3624(c)(4) stating that "[n]othing in this subsection shall be construed to limit or restrict the authority of the [BOP] under section 3621," Petitioner contends that the BOP has the authority to place him in home confinement for an extended period of time and exceed the time-frames provided for in 28 C.F.R. § 570.21.

Petitioner's argument places the cart before the horse. Petitioner is being considered for prerelease custody and programming pursuant to 18 U.S.C. § 3624(c)(1) as there are less than 12 months left before his projected release date, not because he

completed the unit component of the RDAP program. Indeed, if there were more than 12 months left before Petitioner's projected release date, Petitioner would be required to participate in the follow-up component of the RDAP. *See* 28 C.F.R. § 550.53(a)(2) ("If time allows between completion of the unit-based component of the RDAP and transfer to a community-based program, inmates must participate in the follow-up services . . . ."). RDAP "[t]reatment continues for inmates who complete the unit-based component of the RDAP and return to the general population [and a]n inmate *must remain in Follow-Up Treatment for 12 months or until he/she is transferred to a RRC*." P5330.12, p. 22 (emphasis added).

In this case, it happens that Petitioner's completion of the unit-based component of the RDAP coincided with consideration of his prerelease custody and programming. Certainly, Petitioner's case manager would want to make arrangements for Petitioner to participate in the community-based component of the RDAP at the time of Petitioner's prerelease as, without it, Petitioner would not be eligible for the RDAP's benefits. *See* 28 C.F.R. § 550.56(a); Early Release Procedures under 18 U.S.C. § 3621(e), Program Statement P5331.02 (March 19, 2009), p.3, *available at* http://www.bop.gov/policy/progstat/5331_002.pdf. But it is Petitioner's eligibility for prerelease that controls, not completion of the RDAP's unit-based component. The rules and regulations governing prerelease custody and programming provide that Petitioner cannot be placed in home confinement for more than three months.

Furthermore, Petitioner's argument is dependent upon a construction of 18 U.S.C. § 3624 which effectively nullifies two of the statute's subdivisions. "Statutory language

. . . 'cannot be construed in a vacuum. It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'" *Roberts v. Sea-Land Servs.*, 132 S. Ct. 1350, 1357 (2012) (quoting *Davis v. Michigan Dep't of Treasury*, 489 U.S. 102, 108 (1989)). Interpretations of a statute that "render[] any section of the statute superfluous or fail[] to give effect to all of the words used by Congress" are to be avoided. *Westerfeld v. Indep. Processing, LLC*, 621 F.3d 819, 824 (8th Cir. 2010); *see also Roberts*, 132 S. Ct. at 1362 (noting a "duty to give effect, if possible, to every clause and word of a statute" (quotation omitted)). Under Petitioner's interpretation, subdivision (c)(4) of § 3624, in conjunction with § 3621(e)(2)(A), allows the BOP to ignore the limitations prescribed in subdivisions (c)(1) and (c)(2) of § 3624. This is the very type of interpretation that is to be avoided. *See Freeman v. Quicken Loans, Inc.*, 132 S. Ct. 2034, 2043 (2012) ("[T]he canon against surplusage . . . favors that interpretation which *avoids* surplusage.").

In sum, upon successful completion, the RDAP makes an inmate eligible for a reduction in his term of imprisonment—a benefit to be conferred, if at all, at the end of the program. Habeas corpus relief is not available to Petitioner unless "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). As Petitioner himself recognizes, he does not have a right to home confinement or early release. (Pet'r's Reply at 14-15.) *See O'Hara*, 2009WL 3164724, at *5. Petitioner has not shown "anything illegal or unconstitutional about the BOP's procedure for determining when he should be assigned to . . . home confinement."

*Skrzypek v. Cruz*, File No. 08-cv-6111 (ADM/SRN), 2009 WL 465053, at *5 (D. Minn. Feb. 24, 2009). Therefore, Petitioner's petition should be denied.

## IV. EXPEDITED AND INJUNCTIVE RELIEF

In determining whether to grant injunctive relief, the court must consider four factors: (1) whether the movant is likely to succeed on the merits; (2) whether the movant would otherwise suffer irreparable harm; (3) whether the injunctive relief would cause harm to others, and (4) whether an injunction would serve the public interest. *Dataphase Systems Inc. v. C. L. Systems, Inc.*, 640 F.2d. 109, 113 (8th Cir. 1981). Petitioner has the burden of establishing these factors. *Davis v. Francis Howell School Dist.*, 104 F.3d 204, 205-06 (8th Cir. 1997).

Petitioner requests that this Court conduct expedited review of his Petition and grant him "[i]njunctive relief in the form of an Order for the Bureau to stop refusing to consider Toole for placement on home detention as soon as he completes the unit-based component of RDAP on September 27, 2012." (Pet. at 8; *see also* Pet'r's Mot. for Expedited Relief, Docket No. 2.) In support of his motion, Petitioner argues that "the mere passage of time" will deprive him of any remedy; he will suffer injustice and irreparable harm if his Petition is not expedited; and he is likely to prevail on the merits of his Petition. (Pet'r's Mot. for Expedited Relief ¶¶ 10, 14, 17, 18.) Petitioner contends that the BOP "is solely responsible for the delay in deciding [his] pre-release community custody, and [he] should not be further penalized by a larger term of imprisonment because of the [BOP's] lack of due diligence." (Pet'r's Mot. for Expedited Relief ¶ 15.)

First, given that Petitioner is not entitled to home confinement—a fact he himself recognizes—Petitioner will not suffer irreparable harm or injustice if he remains in FPC-Duluth until December 27, 2012.  Second, as set forth above, Petitioner is not likely to prevail on the merits given the statutory limitations on the amount of home confinement a prisoner may receive as part of his prerelease custody and programming.  Third, to the extent Petitioner requests injunctive relief in the form of an order directing the Warden to consider him for early home confinement, Petitioner's request is duplicative of the relief sought under 28 U.S.C. § 2241 and therefore should be denied for the reasons stated herein.

Finally, as for expediting a determination on Petitioner's petition, the Court recognizes that Petitioner's current projected release date is set for late December. Therefore, in the interests of justice, the Court will shorten the objection and response periods to 10 days, rather than 14.  *See* LR 72.2(b).  Accordingly, any objections are due December 7, 2012, and any responses thereto are due December 17, 2012.

[Continued on next page.]

## V. RECOMMENDATION

For the reasons stated above, **IT IS HEREBY RECOMMENDED** that:

1. The Petition under 28 USC § 2241 for Writ of Habeas Corpus by a Person in State Custody (Docket No. 1) be **DENIED.**

2. Petitioner's Motion for Expedited and Injunctive Relief (Docket No. 2) be **DENIED AS MOOT.**


Dated: November  26 , 2012

                                           *s/ Tony N. Leung*
                                       Magistrate Judge Tony N. Leung
                                       United States District Court


Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and by serving upon all parties written objections that specifically identify the portions of the Report to which objections are made and the basis of each objection.  This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals.  **Written objections must be filed with the Court before December 7, 2012, and any responses thereto shall be filed by December 17, 2012.**